UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| BRENT EDWARD GUSTINE,<br><br><br>Plaintiff,<br><br>vs.<br><br><br>COUNTY OF SAN DIEGO;<br>DOES 1 THROUGH 10,<br><br>Defendants. | Case No. 3:19-cv-00903-LAB-NLS<br><br>**ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; AND (2) GRANTING EXTENSION OF TIME TO RESPOND TO ORDER TO SHOW CAUSE**<br><br>**[ECF No. 19]** |

Plaintiff has brought this action under 42 U.S.C. Section 1983 alleging that his constitutional rights were violated when he was housed at the San Diego Central Jail ("SDCJ") in November of 2018. (*See* Second Am. Compl., ECF No. 10.) Defendant County of San Diego moves to dismiss all the claims in Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def.'s Mot., ECF No. 19.) Plaintiff filed an Opposition to Defendants' Motion to which Defendants filed a Reply. (*See* ECF Nos. 22, 23.) For the reasons set forth more fully below, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

## I. Factual allegations[1]

On July 25, 2018, Plaintiff was arrested and housed in the SDCJ. *See* SAC at 4. Plaintiff was placed in "Intake Holding #1" and "went to sleep." *Id.* One day later, Inmate George Julius ("Julius") "was arrested by El Centro Police Department for violating a protective order to prevent domestic violence." *Id.* Plaintiff claims Defendants Mora, Silli, Selensky, and Doe Officers examined Julius and "knew of his propensity of violence." *Id.* Plaintiff alleges one of the Deputies told the other Deputy present that "Julius should not be placed with other inmates." *Id.*

Plaintiff claims that Defendants, "despite … knowing [Julius'] propensity of violence," placed Julius in the same cell as Plaintiff. *Id.* at 5. As a result, Julius purportedly "walked up to Plaintiff and began punching Plaintiff's face and body." *Id.* Plaintiff "fell off the bench" as Julius continued to punch and kick Plaintiff "several times." *Id.* Plaintiff claims to have lost "consciousness" during the encounter. *Id.*

After Plaintiff "regained consciousness, he heard deputies telling him to get out of the cell." *Id.* As Plaintiff was escorted out of the cell, he overheard one Deputy "tell another Deputy, 'I told you [Julius] shouldn't have been placed in a cell with anyone'." *Id.*

"As a result of Plaintiff being attacked, he suffered a broken nose, contusion to his lip, fractured back, shoulder injury, concussions, brain trauma, headaches, memory loss, anxiety, depression and lack of focus." *Id.*

## II. Defendant's Motion to Dismiss

### A.    Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be

---

[1] Page numbers for all documents filed in the Court's Case Management/Electronic Case File ("CM/ECF") will refer to the pagination generated by CM/ECF as indicated on the top right-hand corner of each chronologically-numbered docket entry.

granted." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Bryan v. City of Carlsbad*, 207 F. Supp. 3d 1107, 1114 (S.D. Cal. Mar. 20, 2018).

Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss," *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Villa v. Maricopa Cty.*, 865 F.3d 1224, 1228-29 (9th Cir. 2017). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678-79; *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

B.  Monell liability

Defendant argues that Plaintiff's SAC "fails to state any claim against the County." (Def.'s Mot. at 6.)  in his SAC, Plaintiff alleges that the County of San Diego "bears liability because its policies, practices and/or customs were a cause of Plaintiff's injuries."  (SAC at 12.)

/ / /

3

Under *Monell v. Dept. of Social Service*s, 436 U.S. 658 (1978), a local governmental entity may be sued under § 1983 if four conditions are alleged: (1) the plaintiff "possessed a constitutional right of which he was deprived;" (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the "moving force" behind or cause of the constitutional violation. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) (citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996)).

A municipal entity is liable under section 1983 only if Plaintiff alleges his constitutional injury was caused by employees acting pursuant to the municipality's policy or custom. *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977); *Monell*, 436 U.S. at 691; *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008). The County of San Diego may not be held vicariously liable under section 1983 simply based on allegedly unconstitutional acts of its employees. *See Board of Cty. Comm'rs. v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691 ("[A] a municipality cannot be held liable solely because it employs a tortfeasor."); *Jackson v. Barnes*, 749 F.3d 755, 762 (9th Cir. 2014). Instead, the municipality may be held liable "when execution of a government's policy or custom ... inflicts the injury." *Monell*, 436 U.S. at 694; *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).

The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 385, 396 (1989). Defendant argues that the "SAC does not identify a facially unlawful municipal custom that was a 'moving force' for the constitutional violation alleged in the SAC." (Def.'s Mot. at 11.)

/ / /

/ / /

/ / /

/ / /

In Plaintiff's SAC he alleges that the "County has a policy promulgated to screen inmates" which "directs the deputies to determine housing units for the inmate to ensure the safety of each inmate." (SAC at 10.) Specifically, this policy requires deputies to "assess the initial booking charge, criminal history, medical and psychiatric issues, or other pertinent information during the inmate interview." (*Id.*) However, contrary to Defendant's argument, Plaintiff also alleges that the policy of the County to place all inmates together in a holding cell "prior to inmate classification" is the "moving force behind the constitution[al] violations alleged in the complaint." (*Id.*) Based on these allegations, the Court finds that Plaintiff has alleged the existence of a policy which houses all detainees together prior to determining whether individual detainees may cause harm to other detainees as the "moving force" for the constitutional violations he alleges in his SAC.

Defendant also claims that Plaintiff "appears to be alleging that the constitutional violation complained of is a 'failure to protect' [claim] under the Fourteenth Amendment." (Def.'s Mot. at 12.) In order to bring a claim under *Monell*, Plaintiff must show that the "custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [the jail's] inhabitants.'" *Castro v. County of Los Angeles*, 833 F.3d 1060, 1068-69 (9th Cir. 2016) (quoting *Canton*, 489 U.S. at 392). The Ninth Circuit has held that an objective standard applies and is met when a "plaintiff [ ] establish[es] that the facts available to [entity] policymakers put them on actual *or constructive notice* that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." *Id.* at 1076 (quoting *Canton*, 489 U.S. at 396.)

Plaintiff alleges in his SAC that the County of San Diego was on notice that their policy of housing all detainees together before conducting any screening for mental health or other issues could result in harm to detainees. (*See* SAC at 9-10.) Plaintiff points to published report by an organization named "Disability Rights California" in which they reviewed a three year period, 2015-2018, and found that there had been a problem with "over incarceration of people with mental disabilities" in the SDCJ which

led to "excessive force, inmate suicide." (*Id.* at 9.) In addition, a report was published that "San Diego County Jail's inmate homicides have escalated 3-fold since 2011." (*Id.*) Plaintiff also points to two media reports of non-violent inmates who were "assaulted and killed" when "wrongfully placed" with a "violent offender" while in the custody of the San Diego County Sheriff's Department. (*Id.*)

Viewing the allegations in the light most favorable to Plaintiff, at this stage of the proceedings, the Court finds that Plaintiff has alleged facts to show a policy of housing detainees together prior to conducting any screening existed and put the Defendant on "actual notice" that this policy could result in actions that were "deliberately indifferent" to Plaintiff's constitutional rights. *Castro*, 833 F.3d at 1076.

Accordingly, Defendant's Motion to Dismiss Plaintiff's *Monell* claims based on the existence of a policy that allegedly violated his constitutional rights is DENIED.

Defendant also notes that Plaintiff's SAC includes *Monell* claims based on "failure to properly train" and a theory that the Defendant "ratified" the policy that was allegedly causing the constitutional violation but argues that Plaintiff has not plead any facts to support these claims. (*See* Def.'s Mot. at 17-19). In his Opposition, Plaintiff offers no argument to rebut Defendant's claim that he has failed to allege facts to support either *Monell* theory of liability. Plaintiff only argues that he has "properly plead a *Monell* claim based on inadequate policies to demonstrate a pattern of constitutional violations." (Pl.'s Opp'n at 8.)

A plaintiff may demonstrate that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Kirkpatrick v County of Washoe*, 843 F.3d 784, 793-94 (9th Cir. 2016) (citing *City of Canton v. Harris*, 489 U.S. 389, 396 (1989)). Here, Plaintiff's facts do not support a finding of inadequate training. Instead, Plaintiff's claims are that the policy itself is problematic and thus, additional training on a purportedly problematic policy would not alleviate concerns regarding constitutional violations.

In order to state a claim for *Monell* liability premised upon ratification of a policy, a plaintiff can establish liability by "showing that the decision-making official was, as a matter of state law, a final policymaking authority 'whose edicts or acts may fairly be said to represent official policy' in the area of decision." *Ulrich v. City and County of San Francisco,* 308 F.3d 968, 985 (9th Cir. 2002) (quoting *Monell*, 436 U.S. at 694). Plaintiff may also show ratification by "showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126-27 (1988). Plaintiff's SAC is devoid of any allegation of, or any reference to, any specific official with final policymaking authority.

In addition, Plaintiff's brief reference to ratification appears to be contradictory on its face. Specifically, Plaintiff claims that the individually named Defendants have "been reprimanded or sanctioned by Defendant County or San Diego Sheriff's Department for their failure to protect Plaintiff." (SAC at 11.) However, the very next allegation states that Defendant has "fail[ed] to discipline any officer involved or modify training to address this type of situation in the future." (*Id.*) Plaintiff offers no explanation as to why being "reprimanded" or "sanctioned" is not a form of disciplinary action against the individual Defendants.

Thus, for all these reasons, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's *Monell* claims based on a failure to train or ratification of an allegedly unconstitutional policy.

C.    Unserved Defendants

In the Court's November 21, 2019 Order, Plaintiff was ordered to show cause ("OSC") no later than sixty (60) days from the date the Order was filed why the claims against the Doe Defendants should not be dismissed for want of prosecution pursuant to Fed.R.Civ.P. 4(m). (*See* Nov. 21, 2019 Order, ECF No. 15 at 8.)

Plaintiff did not respond directly to the Court's OSC but instead filed his SAC which substituted some of the Doe Defendants with names of individual Defendants.

(*See* SAC at 4.)  In Plaintiff's Opposition he seeks additional time to identify and serve additional Doe Defendants.  (*See* Pl.'s Opp'n at 9.)  Plaintiff claims that additional discovery is needed to identify these parties.  (*See id.*)

Based on this representation, the Court will GRANT Plaintiff an additional ninety (90) days to identify and serve the remaining Doe Defendants.  If Plaintiff fails to provide the Court with documentation demonstrating proper identification and service on these Defendants within ninety (90) days from the date this Order is filed, the claims against them in this action will be dismissed without prejudice.

## III.    Conclusion and Order

For all the reasons discussed, the Court:

1)    **GRANTS**, in part, and **DENIES**, in part, Defendant County of San Diego's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (ECF No. 19).  Defendant will serve and file an Answer to Plaintiff's SAC within the time set forth in Fed.R.Civ.P. 12(a)(4)(A).

IT IS FURTHER ORDERED that:

2)    Plaintiff must show cause no later than ninety (90) days from the date this Order is filed to identify and serve the Doe Defendants.  If Plaintiff fails to comply with this Court order, he must show cause in ninety (90) days why the claims against the Doe Defendants should not be dismissed for want of prosecution pursuant to Fed.R.Civ.P. 4(m). If Plaintiff fails to provide the Court with documentation demonstrating proper identification and service on these Defendants within ninety (90) from the date this Order is filed, the claims against them in this action will be dismissed without prejudice.

**IT IS SO ORDERED**.

Dated: March 2, 2020

*Larry A. Burns*

Hon. Larry Alan Burns, Chief Judge
United States District Court

3:19-cv-00903-LAB-NLS